**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**LEWIS SPEESE,**                                   **NO. 1:11-CV-0519**
**MARYANN SPEESE**

**v.**                                              **JUDGE CONNER**

**ERIC D. BEYER**                                   **MAGISTRATE JUDGE METHVIN**

**REPORT AND RECOMMENDATION**
**ON MOTION FOR SUMMARY JUDGMENT**
**(Doc. 18)**

Plaintiffs[1] Lewis and Maryann Speese, husband and wife, commenced this

civil rights action on March 18, 2011. (Doc. 1). The complaint, brought pursuant

to 42 U.S.C. §1983, asserts a cause of action for unlawful search and seizure in

violation of the Fourth Amendment (Count I).[2] Named as defendant is Eric D.

Beyer, a member of the Reading Twp. Police Department. (Doc. 1 ¶ 6).[3]

---

[1] Another plaintiff, John Speese, the son of Lewis and Maryann Speese, was dismissed as
a plaintiff on December 13, 2011 per Stipulation of the parties. (Doc. 17).

[2] Claims in the complaint brought under the Fourteenth Amendment were dismissed by
Stipulation and Order. (Doc. 15).

[3] An additional defendant, Todd E. Forney, was dismissed as a party to the action on
March 22, 2012 by Stipulation of the parties. (Doc. 31). Count II and III, asserted against
him, are thus moot.

2

Before the court is the Beyer's motion for summary judgment.[4] The motion has been referred to the undersigned for a report and recommendation and is now ripe for disposition.[5]

## ISSUES PRESENTED

Beyer advances the following arguments in favor of summary judgment:

1.    Summary judgment is warranted because the officers had exigent circumstances to enter and/or search the property.

2.    Beyer is entitled to qualified immunity.

## FINDINGS AND RECOMMENDATIONS

### I. Background

On summary judgment, the facts are to be viewed in a light most favorable to plaintiff as the non-mover. Local Rule 56.1 provides, *inter alia*:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

---

[4] Beyer filed a motion for summary judgment, a supporting brief and a statement of material facts on December 16, 2011. (Docs. 18, 19, 20). The Speeses filed a brief in opposition on January 6, 2009 (Doc. 26) and a counter statement of material facts on January 9, 2012 (Doc. 28). Although Document 28 is docketed as an answer to the statement of facts, it is, in fact, a counter-statement of material facts.

[5] Judge Conner referred the pending motion to the undersigned by Order dated June 12, 2012. (Doc. 35).

3

> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

LR 56.1.

Although Beyer submitted the requisite statement of material facts, with references to the record, the Speeses submitted a separate statement of material facts, which fails to respond to Beyer's statement. Having failed to respond to Beyer's statement of material facts, the Speeses are deemed to have admitted those facts for purposes of the summary judgment motion. *See Conn v. Bull*, 307 F. App'x. 631, 633 (3d Cir.2009) (holding that the District Court did not err in deeming admitted the facts in the movants' Local Rule 56.1 statement where the party opposing failed to include a separate statement responding to the numbered paragraphs in the moving party's statement); *Aubrey v. Sanders*, 346 F. App'x. 847, 847 (3d Cir.2008) (affirming district court's grant of summary judgment after deeming defendants' statements of material fact admitted because the plaintiff violated Local Rule 56.1); *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir.2000); *Carpenter v. Kloptoski*, No. 1:08-CV-2233, 2012 WL 911558 (M.D. Pa. March 16, 2012) (Conner, J.) (plaintiff's statement not in compliance with

4

Local Rule where it failed to include a separate, short and concise statement of
material facts responding to the numbered paragraphs set forth in the statement of
material facts filed by defendant); *Rossi v. Progressive Ins.,* 813 F. Supp.2d 643
n.1 (M.D. Pa. April 25, 2011) (Caputo, J.) (plaintiff's statement, which failed to
respond to defendant's statement, failed to comply with LR 56.1); *Ingram v. SCI
Camp Hill*, No. 3:08-CV-0023, 2010 WL 4973302, *5 (M.D. Pa. Dec. 1, 2010)
(Jones, J.) (because plaintiff's statements did not correspond to the numbered
paragraphs set forth in defendants' statement, he failed to controvert the statements
of fact submitted by defendants and all material facts set forth in defendants'
statement were deemed admitted.).

In keeping with the legal standard for summary judgment, these facts,
viewed in the light most favorable to the Speeses, reveal the following
background:

On March 19, 2009, Lewis and Maryann Speese returned to their home in
York Springs, Pennsylvania, following a hospital stay for pneumonia. (Doc. 20 ¶
7). On March 21, 2009, the Speeses hosted a 30th birthday party for their
granddaughter, Elisia Deputy. (*Id*. ¶ 8). As Deputy was leaving her grandparents'
home between 8 and 9 p.m., John Speese, who also lived at there, arrived.  (*Id*. ¶

5

9). At some later point on March 21, 2009, Leslie Cassiano[6] made a 911 call reporting that John Speese was suicidal, had a gun, and that there was possible drug activity. (*Id.* ¶ 10). Officer Todd Forney, a member of the Lattimore Twp. Police Department, was dispatched in response to the 911 report and Beyer was dispatched to back him up.   (*Id.* ¶ 11).

Arriving first, Forney met John Speese on the sidewalk outside the residence. (*Id.* ¶ 12). Approximately 15 seconds later, Maryann Speese joined the conversation, but was instructed to be quiet, and she became upset.  (*Id.* ¶¶ 14, 15). As Maryann Speese headed back towards the home, Forney became concerned that she would let out the family's pit bull, and Forney therefore stopped her from opening the door.  (*Id.* ¶ 16). Maryann Speese appeared to faint and fell to the ground, at which time Forney dispatched EMS.  (*Id.*).

Lewis Speese, who was inside the home watching basketball, was alerted to the situation by John Speese. (*Id.* ¶ 17). Lewis Speese came to the front door as Beyer arrived on the scene.  (*Id.*). Lewis Speese helped his wife to her feet, and it was suggested that they wait inside for the arrival of EMS. (*Id.* ¶ 18). Everyone then entered the house. (*Id.* ¶ 19). EMS arrived shortly thereafter.  (*Id.* ¶ 20).

---

[6] Cassiano is the ex-girlfriend of John Speese, with whom she has a child and with whom, at the time of this incident, she was engaged in a custody dispute. (Doc. 26, p. 5).

6

After he established that John Speese lived at the residence, Forney asked

him for permission to search his bedroom for drugs, to which John Speese orally

consented. (*Id*. ¶ 21; Doc. 21-6, p. 6 (deposition p. 56:14)). A brief search by

Forney and Beyer yielded nothing that would indicate drug activity. (*Id*.).

Everyone then returned to the kitchen except John Speese, who went to the

basement. (*Id*. ¶ 22). Forney went into a stairwell and used the house phone to call

Cassiano, who provided specific information of where to look for drugs.  (*Id*. ¶

23). Forney returned to the kitchen and asked Beyer where John Speese was, as

each officer believed he was with the other officer. (*Id*. ¶ 23). At that point, both

officers became alarmed that John Speese may have gone to the basement to

commit suicide. (*Id*.).

Both officers went to the basement and found John Speese smoking a

cigarette. (*Id*. ¶ 24). Permission was requested and obtained from John Speese to

search a specific container in which Cassiano indicated drugs could be found. (*Id*.

¶ 25; Doc. 21-6, p. 9 (deposition p. 68:4–9)). John Speese was taken outside,

handcuffed, and placed in the rear of a police car. (*Id*. ¶ 26).

Forney then presented Lewis Speese with a consent to search form and

requested his signature to allow a more expanded search of the basement.  (*Id*. ¶

27). Lewis Speese then called Deputy to return to the house because an ambulance

was there for her grandmother. (*Id*. ¶ 28). Deputy was present when Lewis Speese

signed the consent to search form and, at the request of Forney, she signed as a

witness.  (*Id*. ¶ 29). Deputy testified that her grandfather made the decision to sign

the consent form and that no place other than the basement was searched.  (*Id*. ¶

30).

John Speese was subsequently charged with use/possession of drug

paraphernalia and possession of marijuana and disorderly conduct. (*Id*. ¶ 31). He

was issued a citation and released at the residence. (*Id*. ¶¶ 31, 32). On January 15.

2010, John Speese's motion to suppress was denied, and the court ruled the search

was consensual. He subsequently entered a guilty plea and was ordered to pay a

fine and associated costs. (Doc. 21, Ex. H). The present action followed.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P.

56(a).  "[T]his standard provides that the mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

8

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid or obtain summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed. R. Civ. P. 56(c)(1); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (requiring evidentiary support for factual assertions made in response to summary

judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed. R. Civ. P. 56(e).

## III. Discussion

### (A) Exigent Circumstances

The Fourth Amendment "protects people in their homes from unreasonable searches and seizures by permitting only a neutral and detached magistrate to review evidence and draw inferences to support the issuance of a search warrant." *United States v. Coles*, 437 F.3d 361 (3d. Cir.2006) (citing *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)). "[S]earches conducted outside the judicial process, without prior approval by judge or

magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Exceptions to the presumptive unreasonableness of a warrantless search or seizure inside a home include consent by the occupants consent or probable cause and exigent circumstances exist to justify the intrusion. *Coles*, 437 F.3d at 365

Although exactly what will constitute exigent circumstances may vary depending upon the particular facts of each case, the Supreme Court has identified the following factors that may justify a warrantless intrusion into the home: the imminent destruction of evidence; the need to prevent a suspect's escape; or the risk of danger to the police. *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In the context of the Fourth Amendment, "exigent circumstances" are circumstances in which "the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion." *Coles*, 437 F.3d at 366 (citing *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)).

11

The Third Circuit has identified the following factors for courts to consider when evaluating the existence of exigent circumstances with respect to warrantless home searches: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that contraband was about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is being sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics trafficking. *U.S. v. Rubin*, 474 F.2d 262, 268–69 (3d Cir. 1973).

In the instant matter, Beyer cites Maryann's Speese's health as an exigent circumstance. However, while this situation may justify the officers entering the Speese home, there are no exigent circumstances present related to her health that warrant a search for illegal drugs.[7]

Beyer also asserts that the search was valid because Lewis Speese gave his consent and signed the search warrant. The Speeses contend, however, that the

---

[7] It would be a different situation if, for example, the officers were searching for medication to preserve her health until paramedics arrived and, in so doing, they came across illegal drugs. *See Horton v. California*, 496 U.S. 128, 141 (1990) (the "plain view" exception permits seizure of incriminating evidence found in the course of conducting a lawful search.).

consent was not voluntary because the Forney told him that, if he did not consent,

the SWAT team would come in, with police dogs, and tear the house apart.

Although Lewis Speese did not recall if Beyer was present when Forney made this

statement, Beyer testified that both he and Forney were present with Lewis Speese

when he was asked to execute the consent to search. (Doc. 21-5, p. 9 (deposition p.

31:22--32:2)).

　　　To be valid, consent must be given voluntarily. *Schneckloth v. Bustamonte*,

412 U.S. 218, 228,  93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To justify a search

based on consent, the government "has the burden of proving that the consent was,

in fact, freely and voluntarily given." *Id*. at 222. "[T]he question whether a consent

to a search was in fact 'voluntary' or was the product of duress or coercion,

express or implied, is a question of fact to be determined from the totality of all the

circumstances." *Id*. at 227. Importantly, however, consent need not be knowing or

intelligent, such that it may be given unintentionally and without knowledge of the

right to refuse consent. *See United States v. Lockett*, 406 F.3d 207, 211 (3d

Cir.2005). "[C]ritical factors comprising a totality of the circumstances inquiry

include the setting in which the [search] consent was obtained, the parties' verbal

and non-verbal actions, and the age, intelligence, and educational background of

13

the consenting [party]." *United States v. Crandell*, 554 F.3d 79, 88 (3d Cir.2009)

(alterations in original) (citation omitted).

In *United States v. Sebetich*, 776 F.2d 412, 425 (3d Cir.1985), the Third

Circuit observed that a police officer's statement that, absent consent, he would

seek to obtain a search warrant, "would not militate at all against a finding of

voluntary consent." Police officers at times engage in a "sales job" to make the

alternative of consenting to search more attractive than the option of forcing the

officers to obtain a search warrant. *U.S. v. Claus*, No., 2010 WL 3522117, *4

(W.D. Pa. Sept. 8, 2010). In doing so, officers might attempt to persuade a party

"by pointing out the potential inconvenience and distasteful impacts which the

execution of a search warrant may have on the property" and its inhabitants. *Id*.

Thus, informing a party of the consequences of refusing to consent is not

necessarily a misrepresentation coercing consent; it may merely provide a

permissible "appraisal of the realities" being faced. *See Sebetich*, 776 F.2d at 425.

In the present case, however, both Lewis Speese and Elishia Deputy

testified that Forney stated that, if the consent were not signed, he would get the

SWAT team in, with police dogs, and tear the house apart. (Doc. 21-1, p. 4

(deposition p. 23:19–25; Doc. 21-3, p. 6 (deposition p. 27:8–12)). Such a

statement could, arguably, affect the voluntariness of the consent obtained. *See*

*U.S. v. Clark*, No. 06-CR-376, 2006 WL 3490298, *6 (D.N.J. Dec. 1, 2006)

(officers statement to defendant that, if she refused consent, she could lose her job

and have her apartment torn apart could be considered threats which, if indeed

they were made, could bear on the voluntariness of her consent.); *U.S. v. Wilcox*,

357 F. Supp. 514, 520–21 (E.D. Pa.1973) (consent to search not voluntary where

officer's stated to occupant that, in absence of permission to search, police would

occupy premises tear the house up). *See also Higgins v. Gee*, No.08:06:CV-1928,

2008 WL 190493 (M.D. Fla. Jan. 22, 2008) (officer's threat to "tear [the] place

apart, coupled with plaintiff's repeated refusal to consent to search, rendered

consent obtained involuntary); *United States v. Kampbell*, 574 F.2d 962 (8th

Cir.1978) (consent coerced when defendant was told, after refusing to consent,

that a search warrant would give the police "the authority to tear the paneling off

the walls"); *U.S. v. Taft*, 769 F. Supp. 1295, 1306 (D.Vt. 1991) (agents' threats

that they would tear the apartment apart amounted to coercion that rendered

defendant's consent involuntary.); *but see Holtzen v. United States*, 694 F.2d

1129, 1131 (8th Cir.1982) (consent to search voluntary even where officers

claimed to have warrant, and threatened to "tear apart" defendant's house); *United

States v. Green*, 678 F.2d 81, 83-84 (8th Cir.1982) (consent to search voluntary

where officers threatened "tear the house apart" if occupant did not turn over

drugs and money), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509

(1982); *U.S. v. Medina*, No. 08-CR-231, 2011 WL 887752, *9 (E.D. Wis. March

11, 2011) (agent's statement that house would likely be torn up if occupant failed

to consent to a search did not deprive occupant of the ability to make a rational

decision and, in fact, the agent's statement was probably not all that misleading).

Additionally, the Third Circuit has recognized that verbal threats are

actionable under § 1983 when accompanied by a chilling effect on the exercise of

a constitutional right. *Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d

Cir.2000) (citations omitted); *Shreiber v. Mastrogiovanni*, 214 F.3d 148, 154 n. 7

(3d Cir.2000); *see also Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989).

Here, the Lewis Speese contends that the threat to tear his home apart influenced

his execution of the consent to search form. He has, therefore, presented evidence

of a chilling effect on a constitutional right to be free from an unreasonable and

warrantless search or from the adverse consequences of refusing to submit to such

a search.

Viewing the facts in a light most favorable to the Speeses as the non-

movants, and resolving all inferences in their favor, inasmuch as a statement to

"tear up the home" infects the voluntariness the consent, for purposes of summary

judgment, a fact-finder could determine that Lewis Speese's consent to search the

basement was not free or voluntary. Consequently, summary judgment is not warranted on this issue.

### (B) Qualified Immunity

Nonetheless, Beyer may still be entitled to summary judgment on the Speeses' claim against him if he can establish he is entitled to qualified immunity. Government officials, performing discretionary functions, are entitled to qualified immunity for their actions, if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense that the defendant must raise. *See Siegert v. Gilley*, 500 U.S. 226, 231 (1991). It is the defendants' burden to establish that they are entitled to qualified immunity. *Ryan v. Burlington County*, 860 F.2d 1199, 1204 n. 9 (3d Cir.1988), *cert. denied*, 490 U.S. 1020  (1989). Because the Supreme Court characterizes the issue of qualified immunity as a question of law, *Elder v. Holloway*, 510 U.S. 510, 511 (1994), the resolution of immunity questions early in the proceedings is encouraged. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

17

There are two inquiries that a court must make in determining whether a defendant is entitled to qualified immunity. One is whether the facts as alleged in the complaint make out a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. at 201. The second question is whether "the right was clearly established . . . in light of the specific context of the case." *Id.*

Qualified immunity serves as a shield from suit if a defendant official could have reasonably believed that the actions in question were lawful in light of clearly established law and the information the defendant possessed at the time. *Hunter v. Bryant*, 502 U.S. at 227  (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034 (1987)). Officials who "reasonably but mistakenly" conclude that their actions were lawful are still entitled to immunity. *Id.* This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 229 (citing *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). However, the reasonableness of defendants' actions is measured by an objective standard; arguments that the defendants desired to handle or subjectively believed that they had handled the incidents properly are irrelevant. *Anderson*, *supra.*

In this case, it is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.

18

*Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d

650, 657 (2006); *United States v. McNeill*, 285 F. App'x. 975, 979 (3d Cir.2008).

Accordingly, the relevant inquiry becomes whether the actions alleged by the

Speeses to have been committed by Beyer make out a constitutional violation.

Beyer contends not only that entry into the Speese residence was reasonable

in light of the medical emergency of Maryann Speese, but also that the facts would

lead a reasonable officer to conclude he had consent to search. As noted above, the

health condition of Maryann Speese may justify Beyer's entrance into the Speese

home but has no bearing of the search for contraband relating to the 911 call that

brought the officers to the home in the first place.

Although Beyer maintains that he had reason to believe the search was valid

based on the consent,[8] Beyer testified that he was present with Forney when

Forney asked Lewis Speese to execute the consent to search. (Doc. 21-5, p. 9

(deposition p. 31:22--32:2)).[9] Beyer did not testify that Forney made a statement

---

[8] Beyer would be entitled to immunity with respect to the searches of John Speese's
bedroom, his vehicle and the container in the basement. Based on oral consent given by
John Speese, theses searches not only appear valid but also would lead a reasonable
officer to conclude the searches were lawful.

[9] Contrarily, had Beyer not been present when the consent form was executed by Lewis
Speese, he arguably could have reasonably but mistakenly believed that the consent was
voluntary obtained and thus valid.

19

that, without the consent form being executed, the SWAT team would come in,

with police dogs, and tear the home apart. However, there is a factual dispute as to

whether such a statement was made, as both Deputy and Lewis Speese testified

that Forney did, in fact, make the statement. Because all facts must be viewed in a

light most favorable to the non-movants, for purposes of summary judgment, the

court must accept not only that such a statement was made but also must draw the

inference that Beyer, who was present, was aware of the statement.

A reasonable officer would know that the law is well established that

consent to search must be voluntary. Moreover, the Speeses contend that both

Forney and Beyer testified that they were aware that it would be improper for an

officer to threaten an individual to obtain consent. (Doc. 21-4, p. 4 (deposition p.

14:1–8)).[10]

Thus, Beyer was aware both of the constitutional right to be free from

illegal searches and such a right is well-established. Moreover, for purposes of

summary judgment, Beyer would be aware that Forney's alleged statement

constituted a threat that would undermine the voluntariness of Lewis Speese's

consent. Beyer has not put forth sufficient facts to establish that he was

---

[10] In fact, the Speeses allege that Beyer testified that such a statement would be improper.
However, the Speeses reference parts of Beyer's testimony which they have not included
in the record. (Doc. 28 ¶ 60).

20

"reasonable but mistaken" as to the voluntariness of Lewis Speese's consent. In such circumstances, qualified immunity is not available to shield Beyer from liability. The motion for summary judgment should, therefore, be denied on this issue.

*(C) Punitive damages*

Although not raised by Beyer but by the Speeses, having concluded that the their claim against him should survive summary judgment and proceed to trial, the issue of punitive damages, likewise, should be decided by the trier of fact. Consequently, to the extent it seeks judgment as to punitive damages, the motion for summary judgment should be denied.

**IV. Recommendation**

Based on the foregoing analysis, it is respectfully recommended that the motion for summary judgment (Doc. 18) be granted.

Signed on August 8, 2012.

MILDRED E. METHVIN
U. S. MAGISTRATE JUDGE